UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
        v.                        )      CR No. 06-106-S
                                  )
DERRICK ISOM.                     )
_____ )
```

### OPINION AND ORDER

WILLIAM E. SMITH, United States District Judge.

Derrick Isom has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 186) in the above matter. For the reasons that follow, that motion, along with his related motion, discussed _infra_, must be denied.

I.   Background And Travel[1]

In December 2003, a paid informant told Providence Police that he had purchased crack cocaine from Isom and Khalid Mason, a co-defendant in this matter. According to the informant, the two were conducting a substantial narcotics operation from a home located at 214 Pavilion Avenue in Providence and from another residence in Pawtucket, Rhode Island. Following a

---

[1] The factual background in this matter is drawn from the decision affirming Isom's conviction, _see_ _United States v. Isom_, 580 F.3d 43, 45-46 (1st Cir. 2009), from the record of various hearings on this case (as noted _infra_), and from the papers submitted by Isom in support of the instant motion to vacate. For purposes of the instant motion, this Court recites only those facts pertinent to Isom's § 2255 claims.

period of surveillance, Providence Police Sergeant Scott Partridge obtained a search warrant for both locations on January 16, 2004. On that date, Partridge and several other Providence police officers, including Detectives Joseph Colanduono and Robert Enright, who were also acting as agents of the Drug Enforcement Administration (DEA), went to execute the warrant on the Pavilion Avenue house.

As the officers approached the residence, they saw Isom exit the residence and flee in his car, placing a cell phone call to Mason as he drove off. Officers at the scene unsuccessfully attempted to chase and stop Isom; he was arrested at a motel in Massachusetts later the same day. During the search of 214 Pavilion Avenue, police found slightly more than 303 grams of crack cocaine (some in plain view), packaging materials, $2,360 in cash, and personal items suggesting that Khalid Mason lived there. The search of the Pawtucket residence uncovered $9,551 in cash in a jacket belonging to Isom.

A federal grand jury indicted Isom and Mason in October 2006.[2] The two-count indictment charged them with conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1)

---

[2] Both Isom and Mason were charged in state court with drug offenses arising out of these events. Those charges were later dismissed for want of prosecution. The reasons for the delay in returning the federal indictment are unclear, but ultimately are immaterial to the issues herein.

and (b)(1)(A) and 846 (Count I), and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count II).[3] Isom was represented by Assistant Federal Defender Mary McElroy during all initial and plea proceedings in this Court.

A. Isom's Guilty Plea

Shortly before trial, Isom and his counsel signed a plea agreement. In the agreement, Isom stipulated that he "conspired with Khalid Mason to possess in excess of 303 grams of cocaine base, 'crack,' with the intent to distribute." (Plea Agreement ¶ 4.) The Government agreed, _inter alia_, to include only one of Isom's three prior felony drug convictions in its sentencing enhancement information under 18 U.S.C. § 851, resulting in a potential minimum mandatory sentence of twenty years rather than life imprisonment. (_Id._ ¶ 2.)

At the change of plea hearing on December 15, 2006, there was a lengthy colloquy between the Court and Isom and his counsel concerning Isom's complaints about his counsel and several related matters. Isom first expressed dissatisfaction with his counsel's alleged failure to provide discovery materials to him. (_See_ Change of Plea Tr. ("12/15/06 Tr.") 3-4,

---

[3] Mason alone was charged with a third count: using the third-floor apartment of 214 Pavilion Avenue in Providence as a cocaine base distribution point. As noted, _infra_, all counts against Mason were ultimately dismissed.

Dec. 15, 2006.)  The Government detailed the discovery it had
provided, which included interview reports, a compact disc with
a recording of Isom's post-arrest statement to police, and all
other reports on the case.  (Id. at 4-5.)  Attorney McElroy
informed the Court that she had met with Isom five times after
his arrest, both before and after receiving discovery from the
Government.  (Id. at 5.)

Isom then complained that he had not had sufficient time to
review those materials.  The Court noted that Isom had been
shown the discovery some five weeks prior to the change of plea
hearing.  (Id. at 8.)

Isom further complained about his counsel's alleged failure
to provide research materials on certain legal issues and
contended that she had otherwise failed to explore the
weaknesses in the Government's case against him.  This Court
advised Isom that his counsel was not required to educate him to
the degree of knowledge that a lawyer had concerning his
charges.  (Id. at 7-8.)  As to the second issue, Attorney
McElroy informed the Court, in response to its inquiry, that she
had examined "all aspects" of Isom's case to ensure that Isom's
constitutional rights were protected and had also consulted with
another attorney in the Federal Defender's Office to be certain
she hadn't overlooked anything.  (Id. at 15-16.)  This Court
then told Isom that there was nothing to indicate that "the

Federal Defender's Office hasn't done everything that they should do, and, frankly, more than you would get . . . in many other places to ensure that your rights were protected." (<u>Id.</u> at 16.)

The Court reminded Isom at several points during the change of plea hearing that he still had the choice to plead not guilty, or to plead guilty without the agreement. (<u>Id.</u> at 6, 9-10, 11, 13, 17.) Isom demurred and indicated his willingness to plead guilty. (<u>Id.</u> at 14, 17.) At the conclusion of this colloquy, Isom confirmed: (1) that he understood the nature of the charges against him, the terms of his plea agreement, the penalties he faced, and the constitutional rights that he was waiving (<u>id.</u> at 20-21, 29-31); (2) that he wished to plead guilty under the agreement rather than without an agreement (<u>id.</u> at 20-21); and (3) that he was satisfied with his attorney (<u>id.</u> at 21-22).

The Government's recitation of offense facts described how officers observed Isom fleeing from the Pavilion Avenue residence in his vehicle, while telephoning Mason, and their unsuccessful efforts to stop him. It described the items found during the search of that residence, including the 303 grams of crack cocaine and cash. (<u>Id.</u> at 33-34.) The Government also stated that, when officers caught Isom, they found in his possession a key to the Pavilion Avenue residence, keys to a car

driven by both Isom and Mason, and $1,672 in cash; they also found $9,551 cash in Isom's jacket at his own apartment. (Id. at 34.)

The Government further noted that after his arrest, Isom made several incriminating statements, admitting (among other things) that "he and Mason sold crack cocaine" and that "Mason supplied him with crack cocaine that he would then sell to other people." (Id. at 34-35.) Isom also admitted that "he provided Mason with a cell phone to use." (Id. at 35.)

When the Court asked Isom whether he agreed with these offense facts, he replied that he generally did, but that he did not know the precise amount of crack cocaine that was stored in Mason's apartment on the day of the search. (Id. at 37-39.) Isom then submitted his guilty plea.

Shortly after the change of plea hearing, Isom submitted a letter to the U.S. Probation Office in connection with its preparation of his Presentence Report (PSR), stating: "I fully and freely acknowledge that I conspired with Khalid Mason to possess cocaine base with the intent to distribute on January 16, 2004." (Undated Letter attached to PSR ¶ 1.)

B.   Mason's Motion to Suppress

Thereafter, Isom's co-defendant Mason moved to suppress the drugs seized from the Pavilion Avenue residence. Mason contended that the affidavit supporting the warrant application

contained falsehoods made pursuant to a conspiracy between Sergeant Partridge and two local criminal defense attorneys -- John M. Cicilline and his law partner -- and their paralegal. The gist of the scheme was that criminal defendants, or persons on their behalf, would pay the attorney and his cohorts either to bribe law enforcement officials to drop the charges or to plant evidence on third parties to enable the defendant to benefit through "cooperating" with authorities by providing information about the fictional crime.

After a two-day Franks hearing at which several witnesses (including Detective Partridge) testified, this Court denied Mason's motion to suppress in a detailed written decision. See generally United States v. Mason, 497 F. Supp. 2d 328 (D.R.I. 2007). In its ruling, this Court found that, although Mason's claim was plausible because the attorneys and paralegal in question had all been indicted for a similar scheme,[4] Mason was unable to implicate the warrant's affiant -- Sergeant Partridge -- in the overall scheme, or in connection with any wrongdoing in Mason's case. Id. at 330-32. The Court concluded that "Mason simply has not presented any credible evidence that Scott

---

[4] Attorney Cicilline, his partner, and his paralegal ultimately pleaded guilty in Massachusetts federal court. See United States v. Cicilline, No. 1:07-cr-10008-NMG (D. Mass. June 6, 2008).

Partridge lied in his affidavit or the search warrant." Id. at 332.[5]

Isom, already having pleaded guilty, testified at the Franks hearing concerning his contacts with the scheming attorney and also reiterated his dissatisfaction with his own attorney. He further testified that he "never dealt with [Mason] in a conspiracy" and the crack cocaine seized at 214 Pavilion Avenue was not his. (See Khalid Mason's Mot. to Suppress Hr'g Tr. 16-17, 22-23, July 11, 2007 ("7/11/07 Tr.").) Isom did admit that he had had a drug-dealing relationship with Mason, disputing only whether it was operative at the time of his arrest in January 2004. (Id. at 45-52.) Because this testimony conflicted with both Isom's plea agreement and the letter he had previously sent to the U.S. Probation Office, the Government withdrew its recommendation that Isom receive an offense level reduction for acceptance of responsibility and requested an upward adjustment in his offense level based on obstruction of justice.

---

[5] Although it denied the suppression motion, the Court expressed great concern about the "shoddy police work" uncovered during the suppression hearing and the "astonishing" testimony from Partridge and his partner that they failed to contemporaneously document any aspect of the ongoing investigation of Mason, Isom, and the 214 Pavilion Avenue residence. United States v. Mason, 497 F. Supp. 2d 328, 332-35 (D.R.I. 2007).

Approximately one week before Mason's trial was scheduled to begin, Detective Partridge informed prosecutors that he had located in his home attic a box containing surveillance reports, notes and other reports related to the Mason-Isom investigation. Given this turn of events, the Government, on August 20, 2007, moved to dismiss the indictment against Mason with prejudice. This Court reluctantly granted the motion.

C.    Isom's Motion to Withdraw His Plea

After Mason's case was dismissed, Isom, represented by new counsel, Attorney Patrick Sullivan,[6] requested a continuance of his sentencing hearing, and then filed a motion to withdraw his guilty plea (ECF No. 157).  In his motion, Isom asserted:  (1) that he entered his guilty plea without the Government having fully complied with its discovery obligations; (2) that evidence discovered after his plea suggested that it was not entered into knowingly, voluntarily or intelligently; and (3) that Partridge's conduct was so outrageous that it deprived Isom of his state and federal substantive due process rights.  Isom also professed his innocence of the offenses to which he had pleaded.

After hearing, this Court rejected Isom's arguments and denied the motion to withdraw.  The Court noted (1) that its

---

[6] Attorney Mary McElroy withdrew as Isom's counsel due to a conflict in the Federal Defender's Office arising from that Office's representation of a defendant in Attorney Cicilline's case in the U.S. District Court in Boston.

earlier plea colloquy with Isom had been thorough and that Isom had admitted his guilt in his own words; (2) that Partridge's testimony during the suppression hearing did not imply that Partridge lied in the search warrant affidavit; (3) that there was nothing in the newly discovered materials that would have caused the Court to rethink its ruling denying Mason's suppression motion and that those materials were not exculpatory and thus would not have been discoverable; and (4) that Isom's claim of actual innocence was not credible, given his earlier testimony and admissions and the 11-month delay in filing the motion to withdraw; rather, the motion reflected "a tactical move" designed to put Isom in a position where his case might be dismissed, as was Mason's case. (See Mot. to Withdraw Guilty Plea Hr'g Tr. ("12/13/07 Tr.") 48-57, Dec. 13, 2007.)

The PSR prepared by the U.S. Probation Office found that Isom was a career offender and calculated a guideline range of 360 months to life imprisonment, based on an offense level of 37 and a criminal history category VI. Isom's letter of apology was appended to that Report. Isom did not object to the Government's statement of the offense facts in the PSR, which essentially repeated the plea hearing summary (PSR ¶ 9), but he did object to the Government's proposal for an upward adjustment

for obstruction of justice based on his false testimony at the suppression hearing.[7]

At the sentencing hearing conducted on February 15, 2008, this Court denied this objection. The Court then sentenced Isom to 300 months imprisonment -- some 60 months less than the low end of the applicable guideline range -- followed by 10 years of supervised release.

Isom appealed, represented by still different counsel, Attorney Todd Bussert. On appeal, Isom principally challenged the denial of his motion to withdraw his plea as well as the plea itself.[8] In an extensive opinion, the First Circuit affirmed his conviction. See generally United States v. Isom, 580 F.3d 43 (1st Cir. 2009). The First Circuit concurred with this Court's findings that the errors and omissions of law enforcement did not draw into question the credibility of Detective Partridge's application for the search warrant or otherwise tend to show Isom's factual innocence of the charges. Id. at 53. The U.S. Supreme Court denied further review. See generally Isom v. United States, 130 S. Ct. 1113 (2010).

---

[7] Isom also objected to the inclusion of details of his past offenses listed in the PSR, contending that this Court should not consider those details. This is not in issue here.

[8] The Court also addressed whether the appeal waiver provision in Isom's plea agreement precluded his appeal and concluded that it did not. Isom, 580 F.3d at 50-51. That issue is not pertinent here.

D.   Colanduono Indictment

In late 2009 and early 2010, the Rhode Island State Police conducted an investigation of a cocaine conspiracy involving members of the Providence Police Department.   As a result of this investigation, several Providence Police officers were indicted on drug and conspiracy charges, including Detectives Joseph Colanduono and Robert Enright -- along with a number of other individuals, including Isom's former co-defendant Khalid Mason and Albert Hamlin, a chief supplier of the drugs.[9]

Both Colanduono and Enright had some involvement in Isom's arrest and post-arrest investigation.   Colanduono and Enright were present with other police officers at the Pavilion Avenue residence during the execution of the search warrant; they observed Isom flee and both participated in the search of 214

_____

[9] According to the Government, Colanduono was indicted for Conspiracy to Violate the Rhode Island Uniform Controlled Substances Act on the following dates:   December 14, 2009; December 20, 2009; February 9, 2010; and March 1, 2010; and for three offenses committed on March 4, 2010:   Possession of Cocaine, Larceny, and Misprision of a Felony.   Colanduono was separately indicted for Harboring a Criminal and Conspiracy, both offenses alleged to have been committed on November 12 and 17, 2009.   (See Gov't's Resp. in Opp'n to Pet'r's Mot. under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence ("Gov't Mem.") 13-14 n.5, ECF No. 191.)

The Court notes that Detective Colanduono subsequently pleaded guilty in Rhode Island Superior Court to drug conspiracy and related charges and was sentenced in February 2011 to twenty years imprisonment.   The charges against Enright were ultimately dismissed.   Thus, for purposes of this decision, this Court's analysis principally focuses on Colanduono's activities in Isom's case.

Pavilion Avenue.  Colanduono found paperwork in Mason's name and a drug ledger.  Enright and Providence Police Sargeant Fabio Zuena also obtained a recorded confession from Isom upon his arrest in 2006.  This confession was one of several occasions on which Isom made inculpatory statements as to involvement in his drug offenses.  He made similar statements after pleading guilty, when he was debriefed by Detectives Enright, Colanduono, and Conley in the presence of his attorney and the Assistant U.S. Attorney.

After Colanduono's downfall, Isom filed the instant motion to vacate.  In his motion he raises three claims: (1) that he was the victim of "police misconduct" and was actually innocent of the charges to which he pleaded; (2) that the Government engaged in vindictive prosecution; and (3) that his counsel, at and before the change of plea hearing, was ineffective.

The Government has opposed the motion, and Isom has filed a Reply as well as several supplemental filings.[10]  This matter is ready for decision.[11]

## II. Discussion

Generally, the grounds justifying relief under § 2255 are limited.[12]  A court may grant such relief only if it finds a lack

---

[10] Isom's Reply is entitled "Petitioner's Response to Government's Opposition of Petitioner's Motion under 28 U.S.C. § 2255 To Vacate, Set Aside or Correct Sentence" (ECF No. 193). His supplemental filings include:  (1) a letter dated September 11, 2011 to the undersigned ("9/11/11 Ltr., Part I"), accompanied by an undated letter, also to the undersigned, ("9/11/11 Ltr., Part II"); (2) a letter dated October 23, 2011 to the undersigned ("10/23/11 Ltr."); and (3) a letter dated December 20, 2011 to the undersigned ("12/20/11 Ltr.").  The subsequent letters raise additional ineffective assistance claims as well as a sentencing claim, which are discussed infra.

This Court notes that Isom's filings in support of his motion to vacate have included voluminous exhibits and appendices (totaling in excess of 150 pages, single-spaced).

[11] Isom requests an evidentiary hearing on his claims. However, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit.  See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible" (internal quotation marks and citation omitted)); see also Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (holding that no hearing is required where the district judge is thoroughly familiar with the case).

[12] Title 28 U.S.C. § 2255 provides in pertinent part:

of jurisdiction, constitutional error, or a fundamental error of law.  See United States v. Addonizio, 442 U.S. 178, 185 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks and citation omitted)).

A motion under § 2255 is not a substitute for a direct appeal.  See United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" -- or, alternatively, that he is "actually innocent" of the offense for which he was convicted.  Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted); see also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999).  Claims of ineffective assistance of counsel, however, are not subject to this

---

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

procedural hurdle.  See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

A.   Actual Innocence/Police Misconduct

Isom's first claim, distilled to its essence, is that the Colanduono indictment constitutes new evidence demonstrating that he was the victim of police misconduct, so as to vitiate his guilty plea.  (Pet'r's Mem. of Law in Support of 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence ("Pet'r's Mem.") 16-22, ECF No. 186-1.)  Isom also asserts that he is innocent of the charges to which he pleaded.  These claims fail on both procedural and substantive fronts.

First, as the Government points out (Gov't's Resp. in Opp'n to Pet'r's Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Gov't Mem.") 12, ECF No. 191), this claim is not cognizable under § 2255.  The First Circuit has stated that "new evidence claims . . . are cognizable grounds of relief only in post-trial motions for a new trial and not under habeas or its section 2255 surrogate."  Conley v. United States, 323 F.3d 7, 13-14 (1st Cir. 2003).  "Merely to claim that new evidence casts doubt, even grave doubt, on the correctness of a conviction is not a ground for relief on collateral attack."  Id. at 14 (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)).

Here, Isom's claim that the Colanduono indictment suggests police misconduct in his case, so as to cast doubt on his

conviction, is precisely the type of claim that may not be asserted in this postconviction proceeding, pursuant to <u>Conley</u>. Thus, for this reason alone, this first claim is barred.

Second, even if considered on its merits, this claim cannot succeed. Isom has made no showing that the charges against Colanduono have any bearing on his own case. Isom fails to show how the prosecution involving Colanduono, Khalid Mason, and others -- arising more than six years after Isom's arrest and three years after his plea -- relates to Isom's guilt or innocence of the charges to which he pleaded. Aside from the fact that Mason was Isom's co-conspirator and Colanduono was one of several officers participating in the search of 214 Pavilion Avenue -- and even assuming that both Colanduono and Mason may have been dealing with Hamlin at that time -- Isom has not presented any evidence, beyond conjecture, connecting the two cases. Moreover, Isom presented similar claims that the drugs at the Pavilion Avenue residence were planted -- albeit as part of a different scheme involving Attorney Cicilline and his associates -- as part of his motion to withdraw his plea, which claims were rejected by this Court. <u>See</u> <u>supra</u> at 8-11.

At best, the Colanduono indictment (and his subsequent conviction) might conceivably generate impeachment evidence as to certain of the officers involved in Isom's case. However,

Isom makes no showing as to how Colanduono's subsequent prosecution undermines his guilty plea.[13]

In addition, as noted by the First Circuit in affirming Isom's conviction, "Isom's claim of innocence flies in the face of [his] several admissions to the contrary." Isom, 580 F.3d at 53. As the Government asserts without contradiction, during separate interviews prior to his plea, one of which was recorded, Isom admitted his guilt.[14] Then, while under oath at the change of plea hearing, he again admitted his guilt.[15] During two subsequent debriefings, Isom reiterated his guilt.[16] Again,

---

[13] The case decisions on which Isom relies to support this claim (Pet'r's Mem. 19-20) do not assist him. United States v. Materas, 483 F.3d 27 (1st Cir. 2007), is not remotely related to the instant case. The other cases cited, while involving corrupt police officers, are all factually distinguishable, and none involve alleged planting of drug evidence.

[14] The government recites that Isom made admissions to Detective Sergeant Mansolillo and Detectives Marsland, Sweeney, and Finnegan on January 16, 2004. Isom also made admissions to Detectives Whalen and Partridge on January 20, 2004. (Gov't Mem. 14 n.6.)

[15] During his plea colloquy, Isom admitted his guilt and generally concurred with the factual summary given by the government, other than drug quantity, stating "I agree that the Government had, basically, made its case, and I was guilty of distributing them drugs, and I was in conspiracy and the aiding and abetting, I agree to it" and "All's I knew was that I could get drugs from [Mason's] residence at any given time, and I could make money off them." (Change of Plea Tr. ("12/15/06 Tr.") 38-39, Dec. 15, 2006.)

[16] According to the Government, in the course of debriefings on February 23, 2007 and March 2, 2007 conducted by Detectives Enright, Colanduono, and Conley in the presence of Isom's

at Mason's suppression hearing, Isom testified under oath that he obtained crack cocaine from Mason. (<u>See</u> 7/11/07 Tr. 45-47.) Further, in his acceptance-of-responsibility letter to the U.S. Probation Office, Isom admitted that, on January 16, 2004, he conspired with Mason to possess cocaine base with the intent to distribute it. (<u>See</u> Undated Letter attached to PSR ¶ 1.)

Even apart from his admissions, the evidence discovered in the course of the searches at both locations and Isom's own actions in fleeing the scene at the Pavilion Avenue residence likewise contravene his present assertions of innocence.

Finally, this Court has previously expressed its skepticism of Isom's claim of actual innocence. At the hearing on Isom's motion to withdraw his plea, the Court concluded that Isom pleaded guilty because he was guilty and that Isom's protestations of innocence were merely an attempt to capitalize on Mason's good fortune. (12/13/07 Tr. 54-55.) Isom has made no showing here which prompts this Court to reconsider its prior conclusion.

---

counsel and the Government's attorney, Isom stated that several days prior to the execution of the search warrant he received three kilograms of cocaine, one of which he gave to Mason; that he sold powder cocaine to Mason who would in turn provide Isom with crack cocaine whenever Isom needed it; and that one or two days prior to the search he went to Mason's apartment to pick up an ounce of crack cocaine, but left without it because he did not like the quality. (Gov't Mem. 16.) Isom has not disputed these representations.

B.    Prosecutorial Misconduct/Vindictive Prosecution

In his second claim, Isom asserts that the Government engaged in vindictive prosecution [17] when it dismissed charges against Mason, but continued in its prosecution of him.    This claim is likewise without merit. [18]

Although a prosecution "may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," United States v. Gary, 74 F.3d 304, 313 (1st Cir. 1996) (quoting Wayte v. United States, 470 U.S.

---

[17] Both Isom and the Government discuss the term "selective prosecution" as well as "vindictive prosecution" and cite to cases discussing both terms.  Compare United States v. Peterson, 233 F.3d 101, 105 (1st Cir. 2000) (setting forth elements of vindictive prosecution as "facts (1) tending to show selective prosecution, and (2) raising a reasonable doubt about the propriety of the prosecution's motive") with United States v. Lewis, 517 F.3d 20, 25 (1st Cir. 2008) (selective prosecution). For purposes of the instant motion, this Court will construe Isom's claim as one of vindictive prosecution but notes that Isom's prosecutorial misconduct claim fails under either theory of wrongful prosecution -- selective or vindictive -- to the extent that the theories differ.

[18] The Government asserts, as a preliminary matter without elaboration (Gov't Mem. 18), that this claim has been waived, presumably because it was not raised prior to Isom's guilty plea, citing Peterson, 233 F.3d at 105 (vindictive prosecution claim waived if not raised prior to trial).  Although no formal claim of selective or vindictive prosecution was presented by Isom at or before the time of his guilty plea, Isom's successor counsel made several references, at the hearing on his motion to withdraw his guilty plea, to the unfairness of his being prosecuted after the charges against Mason had been dismissed. (See, e.g., 12/13/07 Tr. 5, 14-15.)  Given these statements, and the fact that the claim in any event is substantively meritless, this Court need not make any finding on whether this claim was waived.

598, 608 (1985)), there is a presumption "that the prosecutor acted in good faith, and did not prosecute in a vindictive manner." United States v. Peterson, 233 F.3d 101, 105 (1st Cir. 2000). "To rebut this presumption . . . the defendant must allege facts (1) tending to show selective prosecution" (i.e., that he was prosecuted while others similarly situated were not) and "(2) raising a reasonable doubt about the propriety of the prosecution's motive." Id. (citing Gary, 74 F.3d at 313); see also United States v. Lewis, 517 F.3d 20, 25 (1st Cir. 2008) (stating that the presumption can only be overcome by clear showing that the prosecutor acted with discriminatory intent and discriminatory effect).

In this case, Isom's claim fails on both fronts. At the time Mason's case was dismissed, Isom and Mason were not similarly situated. Isom, who had repeatedly admitted his guilt prior to plea, had pleaded guilty, while Mason had not. As pointed out during the hearing on the Government's motion to dismiss, from an evidentiary perspective, Mason had made the surveillance a central part of his defense. (See Gov't's Mot. to Dismiss Hr'g Tr. ("8/20/07 Tr.") 9-10, Aug. 20, 2007.) With respect to Isom, the significance of any surveillance testimony was overshadowed by his repeated confessions, one of which was recorded. (Id. at 10-11.) Thus, in view of the late disclosure coming on the eve of trial, and in order to avoid any potential

unfairness to Mason, who had elected to proceed to trial, the Government moved to dismiss the indictment against Mason. (Id. at 2-3.) Those reasons were specific to Mason. See Peterson, 233 F.3d at 105 (noting that Peterson's co-defendant was not similarly situated due to her different role in drug conspiracy).

Further, Isom has not demonstrated that the government acted in bad faith or otherwise pursued his case for a constitutionally impermissible reason, such as race, religion, or other characteristic cognizable under equal protection. See Lewis, 517 F.3d at 25. The Government clearly stated its reasons for dismissing the case against Mason on the record, at the hearing on its motion to dismiss (8/20/07 Tr. 2-3), and Isom has made no showing to contradict those assertions. This Court, while questioning whether outright dismissal of the charges against Mason was necessary, did not find any corrupt motive by the Government in seeking a dismissal of the prosecution against Mason. (Id. at 17-18.)

In short, Isom has not demonstrated that he was the victim of vindictive prosecution at the Government's hands. The Government's decision to pursue its prosecution against Isom, who had already voluntarily pleaded guilty to the charges against him while represented by counsel, was not unreasonable or improper. Accordingly, this claim fails.

C.   Drug Quantity

Isom further claims that he should not have been held responsible for the entire amount of drugs at the Pavilion Avenue residence, claiming that he had no idea what amount was present in that house on the date of his arrest. (See Mot. to Vacate 27-28; Reply 8-10.)

This claim requires little discussion.  Drug quantity is relevant to a drug defendant's offense level to the extent it is calculated under the sentencing guidelines.  Here, however, Isom's offense level was driven not by the quantity of crack cocaine attributable to him but by his status as a career offender and by the relevant maximum statutory punishment for his offenses (life imprisonment).  See United States v. Odom, 671 F. Supp. 2d 163, 166 (D. Me. 2009); U. S. Sentencing Guideline Manual § 4B1.1(b).  As such, his offense level was set at 37, with a criminal history category of VI.  Thus, the quantity of drugs attributable to Isom did not play a direct factor in the calculation of his offense level, given his career offender status.

Moreover, this Court sentenced Isom to 300 months imprisonment, some 60 months below the low end of the applicable advisory guideline range.  Thus, this claim fails.

D.    Ineffective Assistance of Counsel

Isom further claims that his first defense counsel rendered ineffective assistance. Specifically, he asserts that Attorney McElroy failed to review discovery and investigate and challenge certain evidence, failed to adequately advise him as to the law applicable to his case, and failed to review the proceedings to ensure that his case had been properly handled and that, as a result, he was misled into pleading guilty, despite not having all of the facts pertaining to his defense. (Mot. to Vacate 26-27, 28; Reply 6-33.)

The Constitution guarantees each defendant effective, although not perfect, representation. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). A petitioner who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)    That his counsel's performance fell below an objective standard of reasonableness; and

(2)    [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); accord United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010).

To satisfy the reasonable performance prong, a petitioner "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" <u>Manon</u>, 608 F.3d at 131 (quoting <u>Strickland</u>, 466 U.S. at 690). The prejudice prong requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Manon</u>, 608 F.3d at 131 (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" <u>Gonzalez-Soberal v. United States</u>, 244 F.3d 273, 278 (1st Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694).

Here, many of Isom's complaints concerning his counsel mirror those raised during his change of plea hearing. The short answer to these assertions is that they were fully addressed by this Court at that hearing, when Isom engaged in an extensive discussion with the Court regarding his counsel's performance. [19]  In response to Isom's complaints, this Court

---

[19] The transcript reflects that Isom stated the following:

THE DEFENDANT: Like I said, my problem with Ms. McElroy was she would tell me she was going to do something and didn't do it.
   . . . .
I asked her to look into the discovery, look into the search warrant, look into anything, anything I had listed . . . . Look into my arraignment, look into the arrest, and look into the things that, you know,

inquired of defense counsel as to what actions she had taken on behalf of Isom. (12/15/06 Tr. 5, 15-16.) Defense counsel stated on the record that she had examined "all aspects" of Isom's case to ensure that his constitutional rights were protected. She also stated that she had consulted with another attorney in her office to be certain that she had not overlooked anything. (Id. at 15-16.) This more than satisfied counsel's "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691; see also Cullen v. Pinholster, 131 S. Ct. 1388, 1406-07 (2011) (noting that counsel has "wide latitude" in making tactical decisions (quoting Strickland, 466 U.S. at 689)).

Prior to accepting his guilty plea, this Court again asked Isom whether he was satisfied with the representation that he

---

surrounded the case. Just show me that everything was appropriate and I have no problem with pleading. And she told me she would do those things, and she was supposed to do all of this before today. And she came up . . . with the two conspiracy cases yesterday and a case on pursuit. And she, basically, told me the arraignment tapes wasn't available, and . . . that there was no way for her to check on the warrant to verify the warrant. Only thing she has is the discovery, and it was left at that. . . . But . . . if that's all she could do, that's all she could do.

(12/15/06 Tr. 14-15.)

received, and Isom stated that he was. (12/15/06 Tr. 21-22.)[20]
Having satisfied itself that counsel's representation of Isom
was adequate and that Isom wished to plead guilty, the Court
then accepted Isom's guilty plea. (Id. at 22, 39.)

Given this record, Isom has failed to demonstrate any
deficiency in his counsel's performance. Indeed, Attorney
McElroy's performance was well within "the wide range of
professionally competent assistance" that Isom could expect to
receive. Strickland, 466 U.S. at 690. Isom has presented no
new evidence that his counsel's performance was deficient, nor
has he established that he was prejudiced by counsel's actions.

Likewise, Isom cannot demonstrate prejudice from his
counsel's performance. The First Circuit found that, at the
change of plea hearing, this Court adequately and appropriately

---

[20] After Isom stated he was satisfied with his counsel, the
following colloquy occurred:

> COURT: Well, earlier you told me that you weren't.
> THE DEFENDANT: Yeah. Your Honor, with all respects to the
> court, I just -- like, I'm tired of fighting, and I'm not
> going to keep trying to make the situation no worse for
> myself. Like, I'm done. She did her job. You said she did
> her job. I'm fine.
> COURT: All right. I will say for the record, as I did
> before, that I am satisfied that the Federal Defender's
> Office and Ms. McElroy has provided you with adequate
> representation in this case and done what they should have
> done in terms of explaining to you the situation and your
> options about pleading guilty or not pleading guilty.

(12/15/06 Tr. 22.)

addressed Isom's complaints concerning his counsel and that his plea was knowing and voluntary. <u>Isom</u>, 580 F.3d at 54-55. Moreover, had Isom not pleaded guilty pursuant to his plea agreement, he faced a potential sentencing enhancement under 21 U.S.C. § 851 utilizing all three of his prior drug convictions, rather than just one of them, resulting in a potential sentence of mandatory life imprisonment.

E.    Additional Ineffective Assistance Claims

In his Reply (Reply 4-33), Isom asserts additional claims of ineffective assistance.[21]    These claims are likewise without merit.

Isom first claims that Attorney McElroy was deficient in failing to seek and obtain transcripts of Detective Colanduono's testimony before the grand jury that returned Isom's indictment, contending it would have shown that Colanduono perjured himself. However, Isom fails to explain the nature of Colanduono's objectionable testimony or how it would have been exculpatory or otherwise helped his case.    Isom's focus on this testimony appears to be prompted by a vain hope that Colanduono's subsequent indictment and conviction would somehow taint Colanduono's grand jury testimony concerning his investigation of Isom's drug activities.    Accordingly, this claim fails.

---

[21]    Isom reiterates many of these ineffective assistance claims in his supplemental filings. (<u>See</u> 10/27/12 Ltr. 4-6.)

Isom further claims that Attorney McElroy failed to investigate his post-arrest statements and file a motion to suppress those statements, or to otherwise challenge the evidence linking Isom to the drugs at 214 Pavilion Avenue. However, Isom makes no showing that a motion to suppress would likely have been successful, particularly where he does not allege that Miranda warnings were not given and where such statements were made on more than one occasion. This claim also ignores the other evidence against Isom, including the fact that he was observed fleeing from the Pavilion Avenue residence and the cash found on his person and in his own apartment, as noted by the First Circuit. See Isom, 580 F.3d at 46-49 (summarizing the evidence connecting Isom to his co-defendant and to the Pavilion Avenue house and noting Isom's confessions to police).

Moreover, as noted supra, the Court, after questioning counsel concerning her investigation at Isom's change of plea hearing in response to his complaints, concluded that counsel more than adequately represented Isom, in obtaining a plea agreement that avoided a potential mandatory minimum sentence of life imprisonment. (See 12/15/06 Tr. 3-17.) [22] Isom has

---

[22] Isom's attack in his supplemental filings (see 9/11/11 Ltr., Part II 4-7) on this Court's comments at his change of plea hearing regarding his counsel likewise fails, as similar arguments were addressed and rejected by the First Circuit on direct appeal. See Isom, 580 F.3d at 54-55 (rejecting Isom's claim that this Court "coerced" him to plead guilty).

presented no new information to warrant any change in that conclusion.

In short, none of Isom's ineffective assistance claims warrant relief.

F.  Additional Claims

In his supplemental filings, Isom seeks to assert additional claims in connection with his motion to vacate. Most of these claims are re-hashes of claims previously made by Isom concerning: (1) his initial counsel's alleged ineffective assistance in failing to request discovery, investigate grand jury proceedings, and otherwise do more to defend his case (see 9/11/11 Ltr., Part II 3-7; 10/23/11 Ltr. 4-6); (2) his attempts to show a connection between Detective Colanduono and Khalid Mason (12/20/11 Ltr.); and (3) his claims of actual innocence (10/23/11 Ltr. 1-4). Such claims have been previously discussed and rejected, supra, and do not warrant extended discussion. As to the additional materials concerning the history of the relationship between Colanduono, Mason, and Hamlin, it suffices to say that none of the supplemental submissions come close to establishing that Colanduono "planted" the drugs at the Pavilion Avenue residence in January 2004 for which Isom was convicted or to otherwise establishing Isom's actual innocence, particularly in view of his admissions that he dealt drugs with Mason.

The only new claim warranting any discussion is Isom's challenge to the use of his prior conviction in the Government's § 851 information.[23] Isom contends that the conviction used (<u>viz.</u>, Providence Superior Court Case No. P2-1996-4316A) did not constitute a prior felony, so as to trigger an enhanced penalty for his offense, citing <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011) (en banc). (<u>See</u> 9/11/11 Ltr., Part I 1-2; 9/11/11 Ltr., Part II 1-3.)

This claim is meritless. The <u>Simmons</u> case is clearly distinguishable from Isom's case, as the defendant there was convicted of a misdemeanor rather than a felony.[24]

---

[23] As a threshold matter, it is doubtful whether this proposed new claim relates back under Fed. R. Civ. P. 15, so as to be properly asserted here. <u>See</u> <u>United States v. Ciampi</u>, 419 F.3d 20, 23 (1st Cir. 2005) (noting that, in the habeas context, "relation back" provision under Rule 15 is to be strictly construed, in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]" (quoting <u>Mayle v. Felix</u>, 545 U.S. 644 (2005))). However, because the claim is clearly meritless, this Court need not resolve this issue. <u>See</u> <u>Ramos-Martinez v. United States</u>, 638 F.3d 315, 324 (1st Cir. 2011) (noting that courts may elect to "avoid addressing an enigmatic threshold issue by cutting directly to the merits").

[24] In <u>Simmons</u>, the defendant pleaded guilty and was convicted of possessing with intent to distribute at least 100 kilograms of marijuana. The mandatory minimum penalty for this offense was doubled from five years to ten years imprisonment if a defendant had one previous conviction for a felony drug offense. <u>United States v. Simmons</u>, 649 F.3d 237, 239 (4th Cir. 2011) (en banc). Simmons' predicate conviction was a North Carolina state offense of possessing with intent to distribute marijuana, which was punishable by a sentence exceeding twelve months imprisonment <u>only if</u> the state proved: (1) the existence

Here, by contrast, Isom's prior conviction on which the Government relied to enhance his sentence -- the manufacture and delivery of a controlled substance, i.e. crack cocaine, to which Isom pleaded guilty in December 1997 -- was noted as a felony punishable in excess of one year, see PSR ¶ 35, and Isom has not shown otherwise. Indeed, Isom received a sentence of five years, with ninety days to serve and fifty-seven months suspended. (Id.)[25] Moreover, Isom not only failed to object to this prior conviction, but as part of his plea agreement, he stipulated to its authenticity and agreed not to attempt to vacate it. (Plea Agreement ¶¶ 1.c & 2.e.)

Thus, Isom's claim that this prior conviction did not constitute a proper predicate felony drug conviction fails.

This Court has considered all of Isom's other arguments and finds them to be without merit.

---

of aggravating factors sufficient to warrant the imposition of an aggravated sentence; and (2) the defendant had fourteen or more criminal history points, resulting in a "prior record level" of at least five. Id. at 240-41; see also N.C. Gen. Stat. § 15A-1340.13(b). Because Simmons satisfied neither condition, his maximum statutory penalty for the prior state offense was only eight months community punishment, and thus it could not be deemed a felony. See Simmons, 649 F.3d at 243 (citing N.C. Gen. Stat. § 15A-1340.17(c)-(d)). Because the offense could not be counted as a predicate conviction in connection with Simmons' federal drug offense, the Fourth Circuit vacated his sentence and remanded. Id. at 250.

[25] Isom was subsequently found to be in violation of his probation for this offense, as a result of which he served an additional nine months imprisonment. (PSR ¶ 35.)

In view of this Court's determinations on Isom's claims, his motion for appointment of counsel (ECF No. 189) must be denied. Isom's submissions show that he is clearly capable of articulating and presenting his claims.[26]

III. Conclusion

This Court reiterates its previous observation that Isom's efforts to overturn his conviction reflect not his true belief that he is factually innocent of his offenses but rather his desire to benefit from his co-defendant's good fortune in having his case dismissed on grounds having nothing to do with that co-defendant's guilt or innocence. However, the "shoddy police work" that occurred in Isom's investigation and arrest did not render his conduct in selling crack cocaine -- which conduct he admitted on the record on several occasions -- non-criminal or otherwise not subject to prosecution.

In view of the foregoing considerations, Isom's motion to vacate is hereby DENIED and DISMISSED. His motion to file a supplemental exhibit and for appointment of counsel (ECF No. 189) is GRANTED to the extent that he seeks to file the supplemental exhibit, and DENIED as to the appointment of counsel.

---

[26] Isom's request for leave to submit an additional exhibit is granted but this does not change the result reached by this Court.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts, the Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability because Isom has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Isom is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED.

*/s/ William E. Smith*

William E. Smith
United States District Judge
Date: April 26, 2012